IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA,

v.

ANDREW MONROE,

      Defendant.

CRIMINAL ACTION

NO. 1:13-CR-76-RWS-CMS-2

## REPORT AND RECOMMENDATION

Pending before the Court is Defendant Andrew Monroe's Motion for an Evidentiary Hearing on the Admission of Polygraph Evidence [Doc. 114]. Through his motion, Defendant requests that the Court hold a hearing "to consider the admissibility of expert polygraph evidence" related to a polygraph examination taken by him on March 24, 2015.  The Government argues, and the undersigned agrees, that an evidentiary hearing is not necessary, because the purported evidence is inadmissible under four different rules of evidence – Rules 704, 608, 702, and 403. [Docs. 120, 128].

## I.    BACKGROUND FACTS

On March 13, 2013, Defendant Andrew Monroe and his co-defendant, both of whom are police officers, were charged in a multi-count federal indictment with crimes stemming from a sting operation in which Monroe allegedly provided the security detail for illegal drug transactions.[1] [Doc. 9].  Monroe was charged with one count of conspiracy to distribute cocaine, two counts of attempted distribution of cocaine, and two counts of attempted interference with commerce by extortion.

Defendant attended a polygraph examination on March 24, 2015 that was administered by retired FBI examiner Richard Rackleff.  [Doc. 114 at 1].  The Government was not permitted to attend the polygraph examination and was not informed beforehand of its occurrence.  During the polygraph test, Monroe was asked the following three "relevant questions"[2]:

1. In 2012 did you and Vic Middlebrooks discuss providing security for illegal drug transactions?

---

[1]  The case was initiated by way of a criminal complaint filed on February 11, 2013. [Doc. 1].

[2]  The term "relevant questions" is a term of art used by polygraph test administrators.  "Relevant questions" are direct accusatory questions that address the issue under investigation, and are in contrast to "comparison questions," which are ambiguous questions to which the examiner usually elicits a "No" answer. [Raskin Decl., Doc. 124 ¶ 7].

2. At the time you helped provide security for those transactions at the Kroger store, were you aware they involved the sale of illegal drugs?

3. Were you aware that those payments from Middlebrooks were for providing protection on illegal drug transactions?

Monroe answered "No" to each question.  [Doc. 120-1 at 1-4; Doc 124 at 31-32].

According to Monroe's motion, Mr. Rackleff evaluated the polygraph results and concluded that they indicated that Mr. Monroe answered truthfully to the three questions.[3] [Doc. 124 ¶ 39].

On June 1, 2015, Monroe filed a Notice of Intent to Introduce Polygraph Evidence in which he indicated that he intended to use the polygraph  results to corroborate his testimony, in the event that the Government challenged the veracity of his testimony.  [Doc 109].  Monroe also indicated his willingness to submit to another polygraph by a government examiner.  [Id.].  The Government did not request another examination.

---

[3]The only information before the Court regarding what occurred during the examination is a four-page document containing lists of questions and answers that appears to be the raw data.  [Doc. 120-1].  The raw data does not reflect Mr. Rackleff's opinion about the truthfulness of the answers.   Dr. David Raskin, the purported polygraph expert who reviewed Mr. Rackleff's work, provided a declaration in which he reports that Rackleff opined that Monroe answered the questions truthfully. [Doc. 124 at 31-33].  The facts recited herein regarding the date of the test, the questions asked and answered, and Mr. Rackleff's opinion regarding truthfulness of the answers are taken from the raw data and from Dr. Raskin's declaration. [Doc. 124 at 31-33].

Defendant filed his Motion for an Evidentiary Hearing on the Admissibility of Polygraph Evidence on June 30, 2015. [Doc. 114]. In his motion, Defendant presented background information from various trade journals about how polygraphs work, such as testing techniques and the general acceptance of the polygraph in the scientific community. [Id. at 3-26]. Defendant also cited general legal principles concerning the admissibility of polygraph evidence under Federal Rule of Evidence 702 and Daubert.[4] [Id. at 2-3].

The Government filed a brief in opposition on July 27, 2015, arguing that Defendant had failed to comply with the expert disclosure requirements of Federal Rule of Criminal Procedure 16 and that the polygraph evidence should be excluded under Federal Rule of Evidence 702 (improper expert opinion), 403 (danger of prejudice and confusion outweigh any probative value), and 401 (relevance). [Doc. 120]. Monroe filed a reply brief on August 25, 2015. [Doc. 121]. In his four-page reply brief, Monroe did not address the Rule 16 deficiencies, nor did he present any argument as to why Rules 403 or 401 might preclude admission of the evidence. Monroe also attached to his reply two district court decisions – a 2015 order from the Middle District of Florida and a 1995 order from the District of

---

[4] Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 589-91 (1993).

Arizona – apparently asking the Court to accept the reasoning articulated in those two decisions concerning Rule 702 and <u>Daubert</u>.  [Doc. 121].

On September 1, 2015, this Court ordered Defendant to comply with the expert disclosure requirements of Rule 16 and provided the Government with the opportunity to supplement its response after the disclosures were made.  [Doc. 122].  In response to the Court's order, on September 8, 2015, Defendant filed a declaration of purported polygraph expert Dr. David Raskin.  [Doc. 124].  In the declaration, Dr. Raskin provides his opinion that Mr. Rackleff's polygraph examination was conducted according to the currently accepted standards of the polygraph profession and states that he agrees with Mr. Rackleff's determination that the polygraph results were "consistent with the conclusion that Andrew Monroe was truthful when he answered the relevant questions listed above."  [Doc. 124, ¶ 43].

On September 9, 2015, Defendant filed a Notice of Compliance with Rule 16, indicating that he had provided the Government with Raskin's CV, a summary of Raskin's and Rackleff's expert testimony, charts prepared by Rackleff, Raskin's declaration, a CD containing the videos of the polygraph, charts related to the polygraph, "and other materials constituting the basis upon which Rackleff concluded that Monroe was being truthful when he denied knowledge of the

purpose (i.e. protecting drug deals) of his encounters with at the time, Officer Middlebrooks." [Doc. 125].[5]

On September 28, 2015, the Government filed a supplemental brief, reiterating its arguments that the polygraph evidence should be excluded under Rules 702, 403, and 401, and arguing for the first time that the evidence should also be excluded under Rule 704 (opinion on ultimate issue) and Rule 608 (improper corroboration testimony). [Doc. 128]. Defendant was given the opportunity to file a sur-reply but elected not to do so.

## II. DISCUSSION

In this case, Defendant seeks to offer the results of his polygraph examination to corroborate his testimony, in the event the Government challenges the truthfulness of his testimony. Since 1989, the rule in this Circuit has been that polygraph evidence may be admitted for this purpose – at least in theory – provided that "three preliminary conditions" are satisfied. See U.S. v. Piccinonna, 885 F.2d 1529, 1535-36 (11th Cir. 1989) (Piccinonna I) (concluding that the

---

[5] There insufficient information before the Court to determine whether Monroe has satisfied his Rule 16 obligations with respect to the opinions of Mr. Rackleff. Because the Government has indicated that Defendant has satisfied the dictates of Federal Rule of Criminal Procedure 16 [Doc. 128 at 3], the Court has assumed for purposes of this Report and Recommendation that Defendant has satisfied all of his disclosure obligations under the federal rules with respect to both Mr. Rackleff and Dr. Raskin.

former *per se* rule disallowing polygraph evidence was no longer warranted).  The first preliminary condition is that the party intending to offer the polygraph evidence must provide adequate notice to the other party of its intent to use such evidence at trial; second, the opposing party must be given a reasonable opportunity to have its own expert administer a test covering substantially the same questions; and third, the evidence must satisfy the Federal Rules of Evidence for the admissibility of corroboration testimony.  See Piccinonna I, 885 F.2d 1536.  The Eleventh Circuit made clear, however, that satisfaction of these three preliminary conditions, does not mean that the evidence is necessarily admissible.  Ultimately, the decision as to whether to admit polygraph evidence for corroboration purposes "is left entirely to the discretion of the trial judge."  Id.

Here, the Government argues that Defendant cannot satisfy the third Piccinonna I condition because the proffered evidence is inadmissible under several, distinct Rules of Evidence.  This undersigned agrees.  As explained below, the proffered evidence runs afoul of Rules 704, 608, 702, and 403.  Each of these Rules forms a separate, independent basis for excluding Monroe's polygraph evidence.

### A.    Opinion on Ultimate Issue – Rule 704

The Government argues that the polygraph results and the expert's testimony are barred by Rule 704 because the testimony amounts to an expert opinion about whether Monroe had  the mental state necessary for the crimes charged.   Rule 704 provides:

> **Rule 704.    Opinion on an Ultimate Issue**
>
> (a)    **In General – Not Automatically Objectionable**.   An opinion is not objectionable just because it embraces an ultimate issue.
>
> (b)    **Exception**.  In a criminal case, an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense.  Those matters are for the trier of fact alone.

Fed. R. Evid. 704.

Here, Monroe does not deny that he provided protection during two transactions that occurred in the Kroger parking lot. His theory of defense is that he did not know that the transactions involved illegal drugs.  Thus, his polygraph testimony is being offered to demonstrate the he did not have the requisite *mens rea* to be guilty of the charged offense.  Monroe seeks to introduce Mr. Rackleff's opinion that Monroe was truthful when he answered, "No," to the three "relevant questions."  As proffered, Mr. Rackleff (and/or Dr. Raskin) would be expressing,

8

in essence, an opinion that because Monroe was truthful in denying knowingly engaging in illegal acts, he did not possess the mental state necessary to commit the charged crimes.[6]   Such an opinion is prohibited under the Federal Rules of Evidence because it is "about whether [Monroe] did or did not have [the] mental state or condition that constitutes an element" of the crimes charged in the indictment.  See Fed. R. Evid. 704.

District Judge Charles A. Pannell, Jr. recently applied Rule 704 in this way to prohibit polygraph evidence in United States v. Warner, No. 1:13-cr-139-CAP, 2014 WL 1373634 (N.D. Ga. April 8, 2014).   Warner involved a man charged with, among other things, knowingly and intentionally devising a scheme to defraud the Internal Revenue Service by filing fraudulent tax returns. Warner sought to introduce testimony that he had truthfully answered "No" to questions asking whether he (1) had ever filed a tax return knowing that he did not have that person's authority to do so, or (2) had ever filed a tax return knowing that the person was not entitled to the refund he requested.  Id. at * 6.   Judge Pannell ruled

---

[6] As discussed in Section D below, the Government takes issue with the three "relevant questions" because they address Monroe's alleged "actual knowledge" of the illegality of his actions and do not elicit answers regarding the Government's "deliberate ignorance" theory.  According to the Government, the answers to the three "relevant questions" are not relevant, and even if they were, they paint an incomplete picture.

that although the expert did not specifically say that Warner did not possess the requisite *mens rea* to commit the offense charged, such opinion "necessarily flows" from the proffered opinion that Warner truthfully answered those questions. Id. at 10.   Accordingly, the polygraph examiner's testimony would have been a prohibited ultimate-issue opinion under Rule 704(b). Id.   Judge Pannell reasoned that if the expert's opinion is credited by the jury, the opinion would leave no room for inference, but rather would compel the conclusion that the defendant did not possess the requisite knowledge to commit the charged offenses.  Id.; see also U.S. v. Campos  217 F.3d 707, 710-12 (9th Cir. 2000) (explaining the history of Rule 704(b) and affirming the exclusion of polygraph evidence where the questions focused on the defendant's knowledge because the proffered opinion would be testimony from which it necessarily follows that the defendant did or did not possess the requisite mens rea);  U.S. v. Arthur, No. 10-20753, 2011 WL 3844090 (S.D. Fla. Aug. 29, 2011) (excluding polygraph evidence based on Rule 704 where the defendant was accused of being a "straw buyer" in a mortgage fraud case and was asked during her polygraph about whether she had any idea that something might be illegal with the mortgage paperwork).

Here, Mr. Rackleff's opinion that Monroe testified truthfully to the questions administered during the polygraph examination compels the conclusion that

Monroe did not possess the *mens rea* to commit the charged offenses, a necessary element of the charged crime.   Accordingly, Defendant's proffered polygraph evidence should be excluded under Rule 704.

### B.   Improper Corroboration Evidence – Rule 608

The Government argues that a second, independent reason for denying Defendant's motion is that the polygraph evidence is inadmissible under Rule 608, the rule that governs the types of evidence that can be used to show a witness's character for truthfulness or untruthfulness. That rule provides, in relevant part:

**Rule 608.   A Witness's Character for Truthfulness or Untruthfulness**

> (a)   Reputation or Opinion Evidence.  A witness's credibility may be attacked or supported by testimony about the witness's reputation for having a character for truthfulness or untruthfulness, or by testimony in the form of an opinion about that character.  But evidence of truthful character is admissible only after the witness's character for truthfulness has been attacked.

> (b)   Specific Instances of Conduct.  Except for a criminal conviction under Rule 609, extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness.  But the court may, on cross-examination, allow them to be inquired into if they are probative of the character for truthfulness or untruthfulness of :

>> (1)   the witness; or

>    (2)    another witness whose character the witness being
>           cross-examined has testified about.

Fed. R. Evid. 608.  Defendant has stated that he seeks admission of the polygraph evidence only if he testifies, and only if his credibility is attacked by the Government. [Doc. 109].  According to Rule 608(a), if Monroe's credibility is attacked, he can provide evidence in the form of either testimony about his reputation for having a truthful character or testimony in the form of an opinion about his character for truthfulness.  Fed. R. Evid. 608(a).  Extrinsic evidence of specific instances of his conduct, however, is not admissible.  Fed. R. Evid. 608(b).

Judge Pannell addressed this issue in his Warner decision, concluding that the polygraph expert's opinion was not admissible pursuant to Rule 608 because (1) polygraph examination results are a measure of a specific instance of truthfulness, and therefore are inadmissible under Rule 608(b); (2) it was not an opinion as to "character" under Rule 608(a); and (3) even if it were an opinion as to "character," the expert was not qualified to render such an opinion, given the brief time he was acquainted with the defendant.  Warner, 2014 WL 1373634 at *13.  The undersigned agrees with this analysis.

The polygraph evidence that Monroe seeks to admit falls into subsection (b) of Rule 608 – a specific instance of truthfulness – which the rule specifically designates as "not admissible." See Maddox v. Cash Loans of Huntsville, II, 21 F.

Supp. 2d 1336, 1339 (N.D. Ala. 1998) (holding that proffered polygraph evidence was inadmissible under both 608(a) and 608(b)); Arthur, 2011 WL 3844090, at *3 (concluding that polygraph evidence did not constitute opinion or reputation testimony regarding the defendant's character for truthfulness; instead the testimony concerned a specific instance of three prior out-of-court statements and the expert's opinion that the defendant was truthful as to those three statements). There is simply no way that the polygraph opinions can be shoehorned into an admissible "character" opinion under subsection (a) of Rule 608. See U.S. v. Piccinonna, 729 F. Supp. 1336, 1338 (S.D. Fla. 1990) (Piccinonna II) ("a single polygraph testing session represents an inadequate foundation upon which an expert can base an opinion on the defendant's 'character' for truthfulness or untruthfulness. It is inconceivable that anyone, expert or not, could form a valid, reliable, and admissible opinion as to the 'character' of a witness based on nothing more than one single polygraph examination.").

Here, the testimony of Mr. Rackleff (and Dr. Raskin) fails to meet the requirements of Rule 608. The results of the polygraph examination are inadmissible extrinsic evidence under 608(b) and do not amount to an opinion as to Monroe's character for truthfulness. Accordingly, because the evidence concerning

Monroe's polygraph results constitutes impermissible character evidence under Rule 608, the undersigned recommends that it be excluded from trial.

### C.   Expert Testimony/<u>Daubert</u> – Rule 702

The Government also argues that the polygraph evidence in this case does not satisfy the <u>Daubert</u> standard for admissibility under Rule 702.   Rule 702 provides:

**Rule 702.   Testimony by Expert Witness**

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

> (a)   the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

> (b)   the testimony is based on sufficient facts or data;

> (c)   the testimony is the product of reliable principles and methods; and

> (d)   the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.   Pursuant to Rule 702, as well as <u>Daubert</u> and its progeny, "district courts must act as 'gatekeepers'[, admitting] expert testimony only if it is both reliable and relevant." <u>Rink v. Cheminova, Inc.</u>, 400 F.3d 1286, 1291 (11th Cir. 2005). The Eleventh Circuit in <u>Rink</u> stated:

> To fulfill their obligation under Daubert, district courts must engage in a rigorous inquiry to determine whether: (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in Daubert; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

Id. at 1291-92 (quoting City of Tuscaloosa v. Harcros Chems., Inc., 158 F.3d 548, 562-63 (11th Cir. 1998)) (internal quotation marks omitted); see also U.S. v. Frazier, 387 F.3d 1244, 1260 (11th Cir. 2004). "The party offering the expert has the burden of satisfying each of these three elements by a preponderance of the evidence." Rink, 400 F.3d at 1292. This burden remains the same "whether the proponent is the plaintiff or the defendant in a civil suit, or the government or the accused in a criminal case." Frazier, 387 F.3d at 1260. On the issue of whether the evidence would assist the trier of fact, "expert testimony is admissible if it concerns matters that are beyond the understanding of the average lay person." Id. at 1262.

The Government argues, among other things, that even if the proffered experts were found to be qualified and even if the polygraph procedure Mr. Rackleff employed is sufficiently reliable after application of the Daubert factors, the testimony nevertheless is inadmissible because it would not assist the trier of fact. According to the Government Mr. Rackleff's opinion as to the truthfulness of

Monroe's answers to the three "relevant questions" is not the type of evidence that will assist the trier of fact; rather, it concerns the type of credibility determination that jurors are tasked with making in every case.

Defendant relies upon an order from a district court in Florida, United States v. Jesus Hernando Agnulo Mosquera, in which the trial judge admitted expert testimony regarding polygraph results. Case No. 8:14-cr-379, Docket Entry 161, (M.D.Fla. April 9, 2015).  [Doc. 121-1].  The only issue presented in that order was whether the requirements of Rule 702 and Daubert had been met; the court did not address any other evidence rules.  On the issue of whether expert testimony would be helpful to the trier of fact, the Angulu-Mosquera court merely ruled, without any citation to case law,  that the evidence would assist the trier of fact, stating:

> The primary evidence in Defendant's case will be his own testimony. The results of the polygraph and the expert testimony regarding that examination could help the jury make a credibility determination regarding that testimony.  Accordingly the evidence will be helpful to the jury.

Id. at 7.  This decision has not been tested by the appellate courts, is without precedential value in this Court, and certainly represents a minority view on this issue.

16

The courts within this district that have addressed the admissibility of polygraph evidence have concluded that polygraph evidence is not helpful to the jury, and therefore is inadmissible under Rule 702.  In Warner, discussed above, Judge Pannell excluded polygraph evidence under, among other rules, Rule 702, relying principally upon the United States Supreme Court ruling in United States v. Scheffer, 523 U.S. 303 (1998).  See Warner, 2014 WL 1373634, at *9.  In Scheffer, the Supreme Court ruled that a special evidence rule in military courts making polygraph evidence inadmissible in court-martial proceedings did not unconstitutionally abridge the right to present a defense.  See Scheffer, 523 U.S. at 317.  Judge Pannell quoted the Scheffer opinion for the proposition that a fundamental premise of our criminal trial system is that "the jury is the lie detector."  See Warner, 2014 WL 1373634, at *9.  Judge Pannell also noted the Supreme Court's admonition that the duty of determining the credibility of witness testimony "has long been held to be the part of every case that belongs to the jury, who are presumed to be fitted for it by their natural intelligence and their practical knowledge of men and the ways of men."  Id.  In concluding that the polygraph evidence was inadmissible under Rule 702, Judge Pannell stated:

> another person's opinion as to credibility, based on a brief encounter
> at another time and place – outside the presence of the jury and
> without full knowledge of the underlying facts and circumstances
> presented to the jury – "suppl[ies] the jury only with another opinion,

in addition to its own, about whether the witness was telling the truth."

Id. (quoting Scheffer, 523 U.S. at 1267); see also U.S. v. Loaiza-Clavijo, No. 1:08-cr-356-18-WSD, 2012 WL 529975, at *8 (N.D. Ga. Feb. 17, 2012) (ruling polygraph evidence regarding the defendant's state of mind at the time she conducted certain illegal financial transactions inadmissible under Rule 702); Humbert v. City of College Park, No. 1:05-cv-0274-GET, 2008 WL 5586504, at *4, (N.D.Ga. Aug. 18, 2008) (excluding polygraph and expert testimony under Rule 702 because such testimony would not help the trier of fact given that credibility is within the exclusive province of the jury, and the determination of whether the defendant lied is not beyond the understanding of an average lay person).  Moreover, other district courts within this Circuit have also held that polygraph evidence is not helpful to the jury.  See e.g., U.S. v. Arthur, No. 10-20753, 2011 WL 3844090, at *4 (S.D. Fla. Aug. 29, 2011) (finding that polygraph examiner had "merely assessed credibility which is what juries do every day[,]" and that expert evidence would not be helpful to the jury "because the issue of a witness's credibility is one that lay persons are more than competent to handle without the need of expert testimony"); Maddox, 21 F. Supp. 2d at 1340 (concluding that expert testimony about the credibility of a witness "offers the jury little, if any, assistance"); U.S. v. Pavlenko, 845 F. Supp. 2d 1321, 1328 (S.D. Fla.

2012) (ruling that a polygraph expert does not assist the jury in understanding factual matters outside the juror's knowledge, but rather merely merely supplies another opinion as to whether the witness is telling the truth).

The expert opinion that Monroe seeks to introduce in this case addresses his credibility, which is a matter within the exclusive province of the jury.  Because the expert opinion will not address matters beyond the understanding of the jurors, the evidence is inadmissible under Rule 702.

### D.    Probative Value – Rule 403

The Government next argues that the "relevant questions" posed to Monroe during his polygraph examination are flawed because they address only whether Monroe had "actual knowledge" that his acts were illegal, and did not address whether  Monroe was "deliberately ignorant" of the illegality of his conduct.[7]  The Government contends that it can satisfy its burden of proof at trial by showing either that Monroe knew his acts were illegal or that he was deliberately ignorant to the illegality of his conduct.  Accordingly, the probative value of the proffered

---

[7] The Eleventh Circuit's deliberate ignorance jury instruction provides that a defendant is culpable where he was "aware of a high probability that the fact existed."  11th Cir. Pattern Jury Instructions, Special Instruction 8 (2010).  The example provided in the Jury Instructions indicates that in the case of a drug charge, the Government must show that the defendant "actually knew about the controlled substance, or . . . had every reason to know but deliberately closed his eyes."  Id.

evidence is limited.  According to the Government, Monroe's polygraph evidence should be excluded under Rule 403 because its probative value is greatly outweighed by the risk of jury confusion and undue prejudice to the Government.

Rule 403 provides:

**Rule 403.   Excluding Relevant Evidence for Prejudice, Confusion, Waste of Time or Other Reasons**

The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

Fed. R. Evid. 403.

In this case, the proffered polygraph evidence is of marginal relevance at best given its focus on "actual knowledge," and therefore is likely to cause jury confusion.   Moreover, the opinion is of limited probative value due to the circumstances under which Monroe submitted to the examination.  By electing to hold the examination outside the Government's presence, Monroe knew that if he had failed, the results would not be disclosed to the Government.  This diminishes the probative value of the evidence.  See U.S. v. Gilliard, 133 F.3d 809, 816 (11th Cir. 1998) (ruling that the absence of notice to the Government may be a factor in determining whether admission of the polygraph evidence would unduly prejudice the Government and noting "viewing a videotape is not the same as being present

at the examination."); <u>U.S. v. Montgomery</u>, 635 F.3d 1074, 1093 (8th Cir. 2011) (holding that results from a unilateral polygraph examinations have little probative value because the defendant has no adverse interest at stake; such examinations carry "no negative consequences, and probably won't see the light of day if a defendant flunks.").

This evidence also is likely to cause jury confusion because of the nature of the opinion. The polygraph examiner can testify only that the defendant's physiological responses on a particular date and time outside of court indicated a lack of deception.  Such physiological responses are only an indirect indicia of truthfulness, yet there is a substantial risk that the jury may accord such evidence undue weight because it is "clothed . . . in scientific expertise." <u>U.S. v. Duque</u>, 176 F.R.D. 691, 695 (N.D. Ga. 1998); <u>Maddox</u>, 21 F. Supp. 2d at 1340; <u>Scheffer</u>, 523 U.S. at 314; <u>Pavlenko</u>, 845 F. Supp. 2d at 1327-28.

Courts in this district that have been presented with the issue of admitting polygraph evidence have ruled that it is inadmissible under Rule 403.  Judge Pannell addressed this issue in his <u>Warner</u> decision, concluding that what little probative value the polygraph evidence had was outweighed by the highly prejudicial effect it could have and the risk of unduly influencing the jury.  <u>See</u> <u>Warner</u>, 2014 WL 1373634 at *13-14.   District Judge William S. Duffey, Jr. also

addressed this issue, ruling that the prejudicial effect of the proffered polygraph evidence substantially outweighed its probative value.  See Loaiza-Clavijo.  2012 WL 529975 at *8. Citing United States v. Gilliard, Judge Duffey stated, "[t]he truthfulness of Defendant's testimony – if she elects to testify on her own behalf – is a matter for the jury to weigh and determine." Id.

Applying the balancing test of Rule 403 to the facts of this case, the undersigned concludes that Monroe's polygraph evidence would likely confuse the issues that are best developed during direct and cross examination – issues such as whether Monroe is truthful, whether he knew about the illegal drugs, and whether he was deliberately ignorant that the Kroger transactions were illegal.  See Loaiza-Clavijo.  2012 WL 529975 at *8.   Therefore, the evidence should be excluded under Rule 403 because the minimal probative value of the opinion is substantially outweighed by the unfair prejudice to the Government and by the potential for confusing the issues and misleading the jury.

### E.    Evidentiary Hearing

The only purpose of an evidentiary hearing would be to determine admissibility under Daubert.   A Daubert hearing in this case, however, would not assist the Court in conducting the evaluation of admissibility of the results of the polygraph examination.  Moreover, the evidence is inadmissible by application of

other evidentiary rules that do not require the presentation of evidence. Accordingly, the undersigned finds that an evidentiary hearing is not necessary. See Dukes v. Georgia, 428 F. Supp. 2d 1298, 1310 (N.D. Ga. 2006) ("It is within the court's discretion whether or not to hold a Daubert hearing . . . ."); U.S. v. Scarpon, No. 05-2014, 2006 WL 5100541, at *1 (S.D. Fla. Sept. 12, 2006) ("Daubert hearings are not required by law or by rules of procedure and are typically held only when such a hearing would be fruitful for a case as well as a truly constructive use of the court's time and resources.").

### III.   CONCLUSION

For these reasons, the undersigned RECOMMENDS that Defendant's Motion for an Evidentiary Hearing on the Admission of Polygraph Evidence [Doc. 114] be DENIED.   There are no other pending matters before the undersigned in this case.   It is therefore ORDERED that this case is hereby CERTIFIED ready for trial.

IT IS SO ORDERED AND RECOMMENDED this 15th day of October, 2015.

CATHERINE M. SALINAS
United States Magistrate Judge

23